ent plaintiff asks to have the collection of the tax restrained. The acts of Congress deny this right to the plaintiff, if what is sought to be collected as a tax is a tax. The plaintiff asserts this is not a tax, but is a penalty for an alleged crime, payment of which is sought to be exacted under the guise of a tax.

Broadly stated, the question then becomes this: Whether a trial court should find that Congress was doing one thing, notwithstanding the Congressional declaration that it was doing something else. This question has already been ruled, so far as we are concerned, by a refusal to make such a finding.

The question is now presented from a somewhat different angle. An excise or internal revenue tax, as it is called, is really a license fee, or, in other words, it is a contribution to the public exchequer for the privilege of following some occupation, calling, business, or profession. The point made is that the right to do the business to which this levy pertains is denied by the very act which directs the levy. This is true; but none the less there is nothing in this which of itself would deny the power of Congress to levy an excise tax, based upon the fact that the taxpayer had followed a particular business, the tax being levied at the close of the period. The exaction of an excise tax covering a time past would not be affected by the further fact that the business, in respect to which the tax had been assessed, was thereafter and in the future forbidden.

As yet the present plaintiff has been convicted of no offense. In consequence he has not incurred any imposed penalty for such offense, and the penalty cannot be imposed, through the subterfuge of calling it a tax. All this is clear enough. On the other hand, the possession of the power to levy and assess excise taxes cannot be denied to Congress. The real question is: Which is being done?

A somewhat analogous dilemma is presented by those cases in which Congress has no lawful power to prohibit, but does have a lawful power to tax. A tax which is prohibitive is laid. Congress has both prohibited and taxed. What it did, however, it declared the levying of a tax. For a trial court to find the fact to be otherwise might result in embarrassment to the government. The question is properly one to be referred to an appellate court of general jurisdiction.

The motion to dismiss is based upon a state of facts not in controversy, and is granted. This carries with it a denial of the other motions. Exceptions allowed to plaintiff.

---

### In re JUPP.

(District Court, W. D. Washington, N. D. January 25, 1921.)

Aliens ⊗═62—Naturalization; seaman on cable supply ship not one on "merchant vessel."

Within the meaning of Naturalization Act June 29, 1906, § 4, subd. 7, as amended by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352, subd. 7), authorizing naturalization without previous five years' residence of any alien "who has served * * * for three years on

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

board of merchant or fishing vessels of the United States," etc., a "merchant vessel" is a ship that is engaged in the carrying trade in connection with trade and commerce, and does not include a vessel owned by a cable company and used as a supply ship in connection with repair work on its cable lines.

Naturalization Petition. In the matter of the application for citizenship of Francis McLean Jupp. Application denied.

John Speed Smith, of Seattle, Wash., Chief Naturalization Examiner.

NETERER, District Judge. Applicant applies for citizenship under seventh subdivision of Act of May 9, 1918, amending section 4, Act of June 29, 1906 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352, subd. 7):

"Any alien * * * of the age of twenty one years and upward, * * * who has served for three years on board * * * of merchant or fishing vessels of the United States of more than twenty tons burden, and while still in the service * * * or within six months after an honorable discharge or separation therefrom, * * * may, on presentation of the required declaration of intention petition for naturalization without proof of the required five years' residence within the United States. * * *"

The applicant has been in the service of the cable ship Restorer, of more than 20 tons burden, owned by the MacKay-Bennett Company, since May 30, 1916. The ship is used as a supply ship for the cable lines belonging to the owners of the ship. The vessel has been stationed in this jurisdiction and has American register since 1914. The captain, chief engineer, and second mate are aliens. The applicant contends that the vessel is a merchant vessel of American register, and that he is entitled to the benefit of this statutory provision. This ship clearly is not engaged in the business of transporting commodities for trade or commerce, or for use in the general trade. Its business is purely for cable repair work for the MacKay-Bennett Company. "Merchant" is defined by Webster:

"One who carries on trade, or traffic; who buys goods to sell again; any one who is engaged in the purchase and sale of goods; a trafficker; a trader." Hein v. O'Connor (Tex. App.) 15 S. W. 414; Torrey v. Shawano Co., 79 Wis. 152, 48 N. W. 246.

"A merchant * * * is a dealer in goods, wares, and merchandise, who has the same on hand for sale and present delivery." White v. Commonwealth, 78 Va. 484.

The term "merchant" embraces all who buy and sell any species of movable goods for gain or profit. Rosenbaum v. City of Newbern, 118 N. C. 83, 24 S. E. 1, 32 L. R. A. 123.

A merchant ship must be a ship that is engaged in a carrying trade in connection with trade and commerce, and not merely engaged in the transportation of such goods as may be necessary for repairs of cable lines of a privately owned concern, and which goods are not designed for the general trade.

The applicant is not within the provisions of the statute.